FILED

2010 Apr-01  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| DARYL SPENCER, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:10-CV-00064-LSC |
| | ] | |
| CENTRAL CREDIT SERVICE, | ] | |
| | ] | |
| Defendant. | ] | |

Memorandum of Opinion

The Court has for consideration Defendant's Motion to Dismiss or
alternatively Motion for Summary Judgment.  (Doc. 4.)  On December 28,
2009, Daryl Spencer filed this action in the Small Claims Court of Tuscaloosa
County, Alabama pursuant to the Fair Debt Collection Practices Act, 15
U.S.C. § 1692 (2008) ("FDCPA").  It was subsequently removed to this Court
on January 13, 2010.  (Doc. 1.)  The Defendant filed a motion to dismiss or
alternatively a motion for summary judgment on January 20, 2010, arguing
that this action should be dismissed.  (Doc. 4.)  The issues raised in
Defendant's motion have been fully briefed by all parties and are now ripe

for decision.  Upon due consideration and for the reasons stated herein, the motion to dismiss will be GRANTED as to all claims.

II.    Facts.[1]

Plaintiff's FDCPA complaint is unlike those typically filed before this Court.  Whereas a complaint for violations of the FDCPA generally focuses on some substantive aspect of the collection activity — harassment, abuse, threats, calling a person other than the debtor, calling at obscene hours — Plaintiff takes a more technical approach.   Plaintiff argues that since Defendant failed to pay a required licensing tax and procure a license, "each and every communication" constituted a violation of the FDCPA's various protections including unusual time and place, harassment, deception, oppression, abuse, and fraud. (Doc. 1 at 15-19.) Defendant has moved to dismiss this action on several grounds, including that the taxing statute does not apply to Defendant, that failure to acquire a required license is not a violation of the FDCPA, that the taxing statute is void for vagueness, that the taxing statute is a violation of the Dormant Commerce

---

[1] For the purposes of this opinion, the facts are accepted as alleged in the complaint.  Recitation of the facts alleged by Plaintiff in this opinion is not to be construed as a verification that the allegations are true.

Clause, and that Plaintiff lacks standing.

III.   Motion to Dismiss, or in the Alternative, Motion for Summary
       Judgment.

       A.   Standard.[2]

A defendant may move to dismiss a complaint pursuant to Federal Rule
of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon
which relief may be granted.   To survive a 12(b)(6) motion to dismiss for
failure to state a claim, the complaint "does not need detailed factual
allegations"; however, the "plaintiff's obligation to provide the 'grounds'
of his 'entitle[ment] to relief' requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action will not do.
Factual allegations must be enough to raise a right to relief above the
speculative level, on the assumption that all the allegations in the complaint
are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 127 S. Ct.
1955, 1964-65 (2007) (internal citations omitted).[3]   The plaintiff must plead

_____

[2] As the Court does not reach Defendant's motion for summary judgment, there
is no need to recite the summary judgment standard.

[3] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited
standard that "a complaint should not be dismissed for failure to state a claim unless it
appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief" set forth in *Conley v. Gibson. See Bell Atl. Corp.,* 127

"enough facts to state a claim that is plausible on its face." *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364,

---

S. Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

1369 (11th Cir. 1997) (citation omitted).

    B.    Analysis.

    The heart of Plaintiff's complaint alleges that Defendant "collected a debt and/or attempted to collect a debt without first procuring a license and/or failed to pay the license tax required under Alabama law."  (Doc. 1 at 15.)  The complaint contains one count alleging violations of a number of FDCPA provisions.  These provisions and the alleged violations are as follows: 1.  15 U.S.C. § 1692c(a)(1) — "Each and every communication with the consumer without first acquiring a license and/or paying a license tax required by Alabama law was at an unusual time and/or unusual place in that no communication should have been made at all without first acquiring said license and paying said tax"; 2. 15 U.S.C. § 1692c(a)(1) — "Each and every communication with the consumer without first acquiring a license and/or paying a license tax required by Alabama law was at an inconvenient time and/or an inconvenient place in that no communication should have been made at all without first acquiring said license and paying said tax"; 3.  15 U.S.C. § 1692d — "Each and every communication with the Plaintiff without first acquiring a license and/or paying a license tax required by

Alabama law harassed and/or oppressed and/or abused a person, namely the Plaintiff, in that in that [sic] no communication should have been made at all without first acquiring said license and paying said tax"; 4.  15 U.S.C. § 1692d(1) — "Each and every time the Defendant carried on any business and/or did any act without first acquiring a license and paying the license tax it was a crime punishable by fines and 'hard labor . . . for the county.' Ala. Code § 40-12-9(a).  The carrying on of business was a criminal means for the purposes of the FDCPA.  Each and every act of the Defendant within the jurisdiction was a criminal means for the purposes of the FDCPA"; 5.   15 U.S.C. § 1692e — "While attempting to collect a debt and/or while collecting a debt, the Defendant communicated that it was a debt collector when, in fact, it had not first acquired a license and paid the license fee required under Alabama law to be a collection agency/debt collector"; 6. 15 U.S.C. § 1692e(1) — "The Defendant implied that it was vouched for (to the extent that licensing is vouching) by the State of Alabama when, in fact, it was not"; 7.   15 U.S.C. § 1692e(2)(B) — "The Defendant falsely represented that it was providing the service of debt collection when it has not first acquired a license and/or paid the license fee required to be a

collection agency/debt collector under Alabama law"; 8.  15 U.S.C. §

1692e(5) — "The Defendant threatened to collect a debt when the act of

collecting a debt could not legally be taken.  It was not a legal action for

the Defendant to act as a collection agency/debt collector without first

acquiring a license and paying a license tax as required by Alabama law"; 9.

15 U.S.C. § 1692e(9) — "The Defendant used and/or communicated a written

communication which falsely represented it was authorized and/or approved

by the State of Alabama to the extent that licensing authorizes and/or

approves a business to operate within its jurisdictional boundaries when it

did not first acquire a license and pay a license tax as required by Alabama

law"; 10.   15 U.S.C. § 1692e(10) — "While collecting a debt and/or

attempting to collect a debt, the Defendant falsely represented that it was

a collection agency/debt collector without first acquiring a license and

paying the license tax required by Alabama law"; 11.  15 U.S.C. § 1692f —

"Each and every act to collect a debt and/or to attempt to collect a debt

without first acquiring a license and/or paying a license tax required by

Alabama law was unfair . . . [and] unconscionable."  (Doc. 1 at 15-20.)

Defendant has moved to dismiss this action or, in the alternative, for

summary judgment[4] in its favor.  The motion to dismiss is pressed on two grounds.   First, Defendant claims that, as it has no physical, in-state presence in the state of Alabama, the licensing statute in question does not apply to its operations.  Second, Defendant argues that if it is determined that the licensing statute does apply, violating that state statute does not equate to a violation of the FDCPA.

> 1.   Applicability of Licensing Statute to Collection Agencies with No Physical In-State Presence.

Defendant's primary argument in support of its motion to dismiss postulates that since it has no physical presence in the state of Alabama,[5]

---

[4] The Court does not reach Defendant's motion for summary judgment.

[5] Obviously, whether or not Defendant maintains any physical presence in Alabama is a question of fact, one that might ordinarily preclude this Court from granting the motion to dismiss or Defendant's alternative motion for summary judgment.  Plaintiff, however, has not alleged that Defendant has a physical presence in Alabama.  *See* Doc. 1 at 12-20.  In its opposition to the motion to dismiss, Plaintiff provides a bullet point list of why he believes Defendant is subject to the Alabama licensing statute.  (Doc. 11 at 13-14.)   Plaintiff does not include physical presence on this list.  Later, Plaintiff analogizes the licensing statute to specific jurisdiction, specifically arguing that the fact that Defendant has no physical presence in the state is not controlling.  *Id.* at 15-19.  During this discussion, Plaintiff acknowledges that Defendant has no physical presence in Alabama, writing, "As discussed above, CCS — *a nonresident defendant* — has purposefully created a presence in Alabama."  *Id.* at 19 (emphasis added).  Therefore, that Defendant has no physical presence in Alabama is not disputed, and the Court may limit its analysis to whether a collection agency with no in-state physical presence is subject to the licensing statute.

it is not subject to the licensing statute and thus did not violate the FDCPA by failing to pay a license fee.  Before turning to the FDCPA itself, the Court will first look to whether Plaintiff's sole underlying justification for bringing this action against Defendant — that it failed to pay a licensing tax and obtain a license from the state of Alabama before making collection efforts against individuals in the state — is actionable under Alabama law.  Viewing the complaint in the light most favorable to Plaintiff, the Court finds that Defendant is not subject to the Alabama licensing statute.

Alabama Code § 40-12-2(a) states that "[b]efore any person, firm, or corporation shall engage in or carry on any business or do any act for which a license by law is required, he, they, or it, except as otherwise provided, shall pay . . . the amount required for such license."  Alabama law further states that, in the event a license is not acquired, it is unlawful to conduct the licensed activity.  Ala. Code § 40-12-9(a).  The punishment for failure to pay a license fee is a fine not less than the amount of the license owed.  *Id.* If the licensee further refuses to acquire said license, he may be fined "not more than $100 in addition thereto, and may be sentenced to hard labor for the county for not more than six months."  *Id.*  Alabama Code § 40-12-80

provides the licensing requirements for collection agencies.  It reads,

> Each collection agency shall pay the following license tax:  In towns and cities of 20,000 or more inhabitants, $100; in towns and cities of less than 20,000 inhabitants, $25.  Each person who shall employ agents to solicit claims for collection from persons, firms, or corporations in the state shall be deemed a collection agency within the meaning of this section.  This section shall not apply to any person who is excluded from the definition of the term "debt collector" under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

Given that Defendant has no offices, employees, or agents, in the state of Alabama, Alabama law, opinions of the Alabama Department of Revenue, and the statute's plain language indicate that Defendant is under no obligation to pay a licensing fee or acquire a license before engaging in collection activities involving Alabama residents.   In *Ex parte Jefferson County*, the Alabama Supreme Court recognized that "an out-of-state seller [must] have a physical presence in a state in order for that state to have the power to impose on the seller the duty to collect and remit state use and sales taxes."   742 So. 2d 1224, 1225 n.2 (Ala. 1999).[6]   It is perhaps not

---

[6] The court in *Ex parte Jefferson County* addressed the taxing matter in light of the Dormant Commerce Clause.  While the Defendant has argued that to the extent this Court determines that Alabama law requires taxation of out-of-state corporations such a law would violate the Dormant Commerce Clause, it is apparent that there is no need to engage in a Constitutional analysis at this time.  The Court will therefore decline to

surprising then that the Alabama Department of Revenue ("ADR") has stated in its Handbook of Privilege and Store Licences ("Handbook"), "An out-of-state agency, soliciting accounts by letter and/or phone only, and having no agents in this state, does not need Section 80. . . . If an out-of-state collection agency employs any agents in this state, they would be subject to Section 80."[7]  Ala. Dept. of Revenue Handbook of Privilege and Store Licenses, at 78 (http://www.revenue.alabama.gov/licenses/handbook.pdf). While such an interpretation is not binding on this Court, it is well established that courts should "accord great deference to the interpretations of statutes and regulations by the agency charged with administering that regulatory scheme." *Borden v. Meese*, 803 F.2d 1530, 1535 (11th Cir. 1986); *Pharm. Research & Mfrs. of Am. v. Meadows*, 304

---

do so. *Pittman v. Cole*, 267 F.3d 1269, 1285 (11th Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions.") (citations omitted).

[7] Plaintiff admits that the ADR has promulgated this interpretation of Section 80 because of an "apparent concern . . . that it is only authorized to tax those persons or entities which have a presence in its jurisdiction" and that "it would create a host of problems for the Department" to attempt to license and collect tax from an entity with no Alabama presence. (Doc. 11 at 15.) It is bizarre that Plaintiff asks this Court to both overturn the ADR's interpretation of the statute while simultaneously punishing Defendant for, apparently in good faith, not paying a tax that the state of Alabama obviously believes is not due.

F.3d 1197, 1212 (11th Cir. 2002) ("As the agency charged with administering the Florida law, we must defer to its reasonable construction of an ambiguous state statute.").

The ADR's interpretation fits squarely with the plain language of the statute, and to the extent the statute is ambiguous, this Court will defer to the ADR's interpretation.  As noted above, the relevant statute states, "Each person who shall employ agents to solicit claims for collection from persons, firms, or corporations in the state shall be deemed a collection agency within the meaning of this section."  Ala. Code § 40-12-80.  The key ambiguity is what clause "in the state" modifies.  Plaintiff maintains this phrase modifies "persons, firms, or corporations," while Defendant claims that it modifies "agents."  As indicated by the Handbook, the ADR — the agency charged with administering the statute — has determined that the clause "in the state" modifies "agents."  This interpretation is not unreasonable, and the Court will give the ADR the deference it is due.[8]

---

[8] Plaintiff attempts to argue that this interpretation is void as it conflicts with Alabama Code § 40-12-9 making the carrying out of a business without a license illegal. Plaintiff appears to have missed the clause limiting this provision to "any business, or . . . any act *for which a license is required*."  Ala. Code § 40-12-9 (emphasis added). Whether the Defendant required a license is the precise question at issue, and § 40-12-9

Furthermore, even without the guidance of the ADR, it is evident from the language of the statute in question that "in the state" modifies agents and not "persons, firms, or corporations."   This Court is directed to interpret statutes as a whole.   *See, e.g., United States v. Grigsby*, 111 F.3d 806, 829 (11th Cir. 1997).   The first sentence of § 40-12-80 makes it clear that "in the state" modifies agents rather than the categories of possible debtors.   This sentence reads, "Each collection agency shall pay the following license tax: In towns and cities of 20,000 or more inhabitants, $100; in towns and cities of less than 20,000 inhabitants, $25."   Ala. Code § 40-12-80.   Clearly, this sentence divides license fees into two classes.   If the agents are located in a city of more than 20,000 inhabitants, the collection agency must pay $100.   If not, the collection agency must pay $25.   If the impetus of the statute were on the location of the debtor, this distinction would make no sense.   Under that interpretation, the amount the collection agency would pay would depend on whether the debtor lived in a large city or a small city.   While it is logical that an agency would pay more for the privilege of doing business in a higher density area, it is

_____

only makes it clear that if a license was required, Defendant should have obtained one.

nonsensical that the license fee would be greater for collecting a debt of a city dweller as opposed to a person residing in a more sparsely populated area.

Given that out-of-state corporations with no physical presence are not subject to in-state taxation, the interpretation of § 40-12-80 by the ADR, and the plain language of the statute, it is evident that Plaintiff was not under an obligation to pay a licensing fee to the state of Alabama. Therefore, Plaintiff's theory of action under the FDCPA is without merit.

> 2.   Applicability of the FDCPA to Collection Agencies Subject to Licensing Statute.

Even if Defendant were found to be subject to the Alabama Licensing Statute, failure to acquire such a license does not transform Defendant's collection activities in the state of Alabama into violations of the FDCPA. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection." *Brown v. Budget Rent-A-Car Sys.*, 119 F.3d 922, 924 (11th Cir.

1997) (citations omitted); *see also, Dewey v. Associated Collectors*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996) ("In passing the act, Congress sought to protect consumers against abusive debt collection practices.  It did not intend to provide damages to those who did not experience any abusive behavior.").  The thrust of the FDCPA is on the substance of the collection practices and whether they are abusive, not on "technical noncompliance with the Act, when the facts alleged do not suggest abusive or harassing debt collection practices." *Reed v. Bailey*, 1988 U.S. Dist. LEXIS 19456 *9 (N.D. Ala. Aug. 3, 1988).

While the Eleventh Circuit has not addressed whether a violation of state law constitutes a violation of the FDCPA, the Ninth Circuit has stated that "debt collection practices in violation of state law are [not] *per se* violations of the FDCPA." *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (dismissing a case in which a debt collector failed to procure an Idaho license before engaging in collection activities); *see also Lindbergh v. Transworld Systems, Inc.*, 846 F. Supp. 175, 181 (D. Conn. 1994) ("Assuming *arguendo* that the defendant has violated Conn. Gen. Stat. § 42-127a(c), the plaintiff has nevertheless failed to set forth a viable claim

under the FDCPA."); *Richardson v. Allianceone Receivables Management, Inc.*, 2004 WL 867732 *3 (S.D.N.Y. April 23, 2004) ("[T]he contention that every violation of state law raises a federal claim under the FDCPA 'reflects a false, narrow, and overly mechanical reading' of the statute.") (citing *Lindbergh*, 846 F. Supp. at 181).  Several district courts in this circuit have followed this logic.  *See LeBlanc v. Unifund CCR Partners, G.P.*, 552 F. Supp. 2d 1327, 1338 (M.D. Fla. 2008) ("[D]ebt collection actions in violation of state law are not *per se* violations of the FDCPA.") (citing *Wade*, 87 F.3d at 1099-1101); *McCorriston v. L.W.T., Inc.*, 2008 U.S. Dist. LEXIS 60006 *19 (M.D. Fla. Aug. 7, 2008) ("Rather, to the extent that Plaintiff was deprived of any right to administrative review of LWT's qualifications by LWT's failure to register, her remedy lies in Florida state law, not in Section 1692f of the FDCPA.") (citing *Wade*, 87 F.3d at 1100).  Of course, while failure to follow state laws may not constitute a *per se* violation of the FDCPA, there may be circumstances in which the failure to follow state law will constitute a violation.  *See Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995); *LeBlanc*, 552 F. Supp. 2d at 1338-40.

Turning to the Alabama licensing statute in question, the Alabama

Supreme Court distinguishes between two types of licensing statutes —
revenue and regulatory.  To the extent that a provision is merely for the
collection of revenue, the underlying activity for which the license was
required "is not void if no specific prohibition or penalty is provided or
imposed." *Colston v. Gulf States Paper Corp.*, 291 Ala. 423, 427-28 (Ala.
1973).  In other words, when activity is subject to such a revenue license but
done without procuring one, "[t]he business is lawful, but the failure to
procure the license before doing the act is what the law intends to
penalize." *Sunflower Lumber Co. v. Turner Supply Co.,* 48 So. 510, 512
(1909).  This is in sharp contrast to regulatory licensing provisions as the
Alabama Supreme Court has held, "If the conditions of the statute were
made for the benefit of the public, and not for the raising of revenue only,
an agreement is void that does not comply with the statutory conditions."
*Haskew v. Green*, 571 So. 2d 1029, 1031 (Ala. 1990) (citations omitted).
*Haskew* provides instruction on how to determine the nature of a licensing
provision, noting that the underlying business activity is void and unlawful
when the licensing provision is "for the benefit of the public, as for the
maintenance of public order or safety, or the protection of persons dealing

with those upon whom it is imposed." *Id*. If, on the other hand, "no specific penalty is attached to the specific transaction, and the condition is simply for administrative purposes," the underlying business activity is valid. *Id*.

While the Alabama Supreme Court has yet to review the nature of Alabama Code § 40-12-80 — the code section at issue here — it has reviewed § 40-12-84. In doing so, it noted, "A cursory examination of § 40-12-84, located in Title 40 (entitled "Revenue and Taxation"), leads one to the inescapable conclusion that that section does nothing more than provide a convenient method of collecting revenue." *Haskew*, 571 So. 2d at 1032. This section of the code deals with the revenue licensing of contractors. Like § 40-12-80, it is within the Revenue and Taxation title and the Licenses chapter. Both set out a mechanical system for establishing the amount of the license fee — based on the aggregate contract amount for contractors and the size of the city in which collection activities are occurring for collection agencies. Neither establishes minimum qualifications for those seeking a license, an application process, or a board, party, or government agency responsible for ensuring that the entity seeking a license is fit to

conduct business in the state of Alabama.   In fact, the punishment for failure to pay the licensing fee for collections agencies is a fine "not less than the amounts of all licenses required."   Ala. Code § 40-12-9(a).   It is only if the entity in question then "refus[es] to take out the license" that an additional penalty of not more than $100 and "hard labor for the county for not more than six months" is assessed.   *Id.*   At no point does the Code penalize collection agencies for each transaction in which debt collection attempts were made during the period in which a license should have been secured.[9]   As a counterexample, the structure of sections regarding the regulatory licensing of contractors is much different.   The Alabama Supreme Court, in *Cooper v. Johnston*, noted that the license procedure for general contractors begins with the sentence, "In order to safeguard life, health and

_____

[9] Plaintiff attempts to set up Alabama Code § 40-12-27 as punishing collection activities without a license.   That section only states, however, that "[i]f the law annexes a penalty for each or every violation of its provisions" then each day's continuance in the exercise of a business represents a separate offense.   As noted above, the provisions regarding debt collection do not set up a penalty for "each or every violation of its provisions."   Ala. Code § 40-12-9(a).   Compare these licensing statutes to those addressed in *Sibley v. FirstCollect, Inc.*, one of the cases on which Plaintiff relies that has found that collection activities while failing to obtain a required license is a violation of the FDCPA.   913 F. Supp. 469 (M. D. La. 1994).   The underlying statute in that case specifically provided for a fine of $500 and forfeiture of any fees obtained collecting debts without a valid license.   *Id.* at 471.

property and to promote the general public welfare by requiring that only properly qualified persons be permitted to engage in general contracting, there shall be a state licensing board for general contractors, consisting of five members, who shall be appointed by the governor." 283 Ala. 565, 567 (Ala. 1969). *See also*, *Kilgore Dev., Inc. v. Woodland Place, LLC*, 2009 Ala. Civ. App. LEXIS 475 *8-9 (Ala. Civ. App. Sept. 4, 2009) (comparing actions based on the failure to engage in the regulatory licensing procedure versus those based on failure to obtain a business license).

Plaintiff's claims rest on the legal theory that since Defendant did not pay a licensing fee in the state of Alabama, each and every collection attempt it made was itself unlawful and thus a *per se* violation of the various protections offered by the FDCPA. Given the dichotomy established by the Alabama Supreme Court, however, it is clear that this legal theory is without merit. The licensing section relied upon by Plaintiff is intended to generate revenue, not to provide regulatory protection to the people of Alabama from unscrupulous debt collectors. Therefore, "the business is lawful." *Sunflower Lumber*, 48 So. at 512. Whether or not the Defendant was required to pay the license fee, the underlying business activity — the

collection of validly owed debts — was not unlawful.  If the collections activity is lawful, it goes without saying that it cannot represent a violation of the FDCPA.[10]  While *Sunflower Lumber* is an old and venerable case, the words of the Alabama Supreme Court still ring true: "We are not willing to impugn the motives of the lawmakers by charging them with an intention to encourage bad faith on the part of debtors by permitting them to avoid honest obligations, because of the noncompliance with  the revenue law of the party from whom they obtained in good faith money, goods, or other things of value."  *Id.*  In the same vein, the FDCPA was intended to act as a shield against abusive and harassing tactics by unscrupulous debt collectors. It is not, and should not be, a sword to be wielded against collection agencies against whom no substantive claims have been made.

V.    Conclusion.

Given that Plaintiff has alleged no unlawful conduct against Defendant other than attempting to collect a debt without first submitting

---

[10] An otherwise lawful collection activity may be a violation of the FDCPA if it is a substantive violation — *e.g.*, an otherwise lawful phone call made at an obscene hour. Plaintiff, however, makes no such claims regarding the substance of the Defendant's collection activities.

to Alabama's licensing revenue provisions, the complaint fails to state a cause of action on which relief can be granted.   Therefore, Defendant's Motion to Dismiss is GRANTED.   The Court does not reach the Defendant's Motion for Summary Judgment.

Done this 1st day of April 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE